FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★    APR 2003    ★

P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CARMINE A. LOPRESTI,

                    Plaintiff,              02 CV 6492 (SJ)

    - against -                         <u>MEMORANDUM</u>
                                             <u>AND ORDER</u>

CITIGROUP, INC., WENDY Z. GOLDSTEIN, MILES
H. KUCKER, ALLEN SCHECHTER, HOWARD
SMITH, WILLIAM D. MYHRE, DON GOLDSTEIN,
STATE STREET CORP., CITISTREET, CITISTREET
INC., CITISTREET ASSOCIATES LLC, CITISTREET
EQUITIES LLC, CITISTREET FINANCIAL SERVICES,
LLC, TRAVELERS INSURANCE COMPANY,
LUTHERAN MEDICAL CENTER, MAYDA CASADO,
JEAN DESJARDINS, JIM WILSON, SMITH BARNEY
CORPORATE TRUST COMPANY, COPELAND
ASSOCIATES, INC., DAVID A. SPINA, SANFORD
I. WEILL, SALOMON SMITH BARNEY, INC.,
CITISTREET LLC

                    Defendants.
------------------------------------------------------------X

A P P E A R A N C E S:

HENRY M. GRUBEL, P.C.
37 Prospect Street
Freeport, NY 11520
Attorney for Plaintiff

WEIL, GOTSHAL & MANGES
767 Fifth Avenue
New York, NY 10153
By:    David J. Lender
Attorneys for Defendants Citigroup, Inc., Don Goldstein,
State Street Corporation, Citistreet Associates LLC,

1

Citistreet Equities LLC, Citistreet Financial Services
LLC, Travelers Insurance Company, Mayda Casado,
Jean Desjardins, Jim Wilson, Smith Barney Corporate
Trust Company, David A. Spina, Sanford I. Weill,
Salomon Smith Barney, Inc., Citistreet LLC

SICHENZIA ROSS FRIEDMAN FERENCE LLP
1065 Avenue of the Americas, 21st floor
New York, NY 10018
By:   Michael H. Ference
Attorneys for Defendants Wendy Z. Goldstein,
Miles H. Kucker, Allen Schechter, Howard Smith,
William D. Myhre, Lutheran Medical Center

JOHNSON, Senior District Judge:

Plaintiff Carmine LoPresti ("Plaintiff") brings this action against Defendants Citigroup, Inc., Don Goldstein, Citistreet LLC, Citistreet Associates LLC, Citistreet Equities LLC, Citistreet Financial Services LLC, Travelers Insurance Company, Mayda Casado, Jean Desjardins, Jim Wilson, Smith Barney Corporate Trust Company, Sanford I. Weill, Citigroup Global Markets Inc. (formerly known as Salomon Smith Barney, Inc.) (collectively, "the Citigroup Defendants"), Defendants State Street Corporation and David A. Spina (collectively, "the State Street Defendants"), and Defendants Wendy Z. Goldstein, Miles H. Kucker, Allen Schechter, Howard Smith, William D. Myhre, and Lutheran Medical Center ("LMC") (collectively, "the LMC Defendants").[1]

---

[1] Buck Consultants, Inc. d/b/a Buck Consultants, was originally named as a Defendant but has been dismissed pursuant to a previous Order by this Court.

P-049

Plaintiff's Second Amended Complaint ("Complaint") sets forth fifteen Counts. As phrased in the Complaint, they consist of: 1) violations of Title I of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.; 2) violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; 3) violation of the Clayton Act, 15 U.S.C. §§ 15, 26; 4) violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et. seq.; 5) violation of the Donnelly Act, General Business Law § 340 of the State of New York; 6) violation of Article 22-A of the General Business Law of the State of New York §§ 349 et. seq.; 7) violation of § 2123 of the New York State Insurance Law; 8) violation of § 4226 of the New York State Insurance Law; 9) tortious interference with contract; 10) tortious interference with prospective economic advantage; 11) conspiracy; 12) defamation; 13) fraud; 14) unfair competition; and 15) constructive fraud. Count One through Count Six and Count Nine through Count Fifteen are against all Defendants, Count Seven is against all Defendants except Defendant Travelers Insurance Company, and Count Eight is only against Defendant Travelers Insurance Company.

Presently before this Court are Motions to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), one of which was filed by the Citigroup Defendants and State Street Defendants and the other of which was filed by the LMC

3

P-049

Defendants (collectively, "Defendants").[2] Defendants contend that: 1) Count One should be dismissed because Plaintiff has failed to allege facts establishing the applicability of ERISA; 2) Counts Two and Three should be dismissed because Plaintiff has no standing to sue under antitrust laws and has not alleged any cognizable antitrust market; and 3) Count Four should be dismissed because Plaintiff has not alleged any direct injury, any cognizable predicate act under RICO, or any cognizable RICO enterprise.[3]

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court should not dismiss the complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957). On a motion to dismiss a complaint under Rule 12(b)(6), a court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those

---

[2] The Motions set forth the same arguments and so they will both be decided by this Order. However, for the sake of simplicity, any citations to the Motions and accompanying Memoranda of Law will be in reference to Defendant Citigroup's filings.

[3] Defendants additionally argue that Plaintiff's state law claims are deficient. However, as mentioned below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and thus it is not necessary to reach their merits. Defendants also offer specific arguments regarding the claims against Citigroup Inc., State Street Corporation, Sanford Weill, David Spina, Copeland Associates Inc., Citistreet, Citiztreet Incorporated, and Salomon Smith Barney Inc. (Defs.' Mem. Law Supp. Mot. Dismiss at 3–4.) However, as this Court finds that the claims against all Citigroup Defendants and State Street Defendants must be dismissed, it is not necessary to address issues regarding the liability of individual Defendants.

4

P-049

allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001). The following factual background is therefore taken from the Plaintiff's Complaint.

## FACTUAL BACKGROUND

Plaintiff alleges that beginning in about 1976, he was engaged in selling and servicing Internal Revenue Code ("IRC") § 403(b) annuities to LMC employees, as one of six approved vendors of such plans. (Compl. ¶ 42.) Under these plans LMC employees contributed to their IRC § 403(b) annuities through monthly salary reductions. (Id. ¶ 56.) In approximately March of 2001, the LMC Defendants and Citigroup Defendants agreed that LMC would adopt an IRC § 401(k) plan, and LMC sent a notice to Plaintiff's customers informing them of the adoption of this plan. (Id. ¶¶ 59–60.) The LMC Defendants contracted with the Citigroup Defendants to sell and service § 403(b) Tax Sheltered Annuity ("TSA") plans and § 401k plans to LMC employees. (Id. ¶ 39.)

On July 24, 2001 the LMC Defendants caused to be distributed certain Pension Information Packages, authored or co-authored by Defendant Buck, to Plaintiff's customers. (Id. ¶ 61.) The packages included a letter that allegedly contained deceptive, fraudulent, incomplete, and misleading[4] sales and promotional materials for the then-existing and the proposed retirement plans. (Id. ¶¶ 61–62.) The sales materials allegedly

---

[4.] The Court notes that although it must accept Plaintiff's factual allegations as true at this stage of the proceedings, the Court is not required to defer to Plaintiff's suggested conclusions of law, see Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996), such as the assertion that the information was fraudulent.

5

"failed to properly disclose and explain" to Plaintiff's customers the drawbacks of enrolling and participating in Defendants' § 403(b) and § 401(k) plans as compared to the § 403(b) plan offered by Plaintiff. (Id. ¶ 63.) For example, Plaintiff asserts that Defendants did not disclose the imposition of the new and increased surrender charges, different loan provisions, lower guaranteed interest rates, the full adverse impact of converting from a non-ERISA plan, to an ERISA status of their annuities, or the difference to them between an "individual" and a "group" annuity. (Id. ¶ 100.)

Additionally, Plaintiff asserts that the proposed new § 401(k) plan was to be administered by an entity known as Citistreet, which Plaintiff alleges does not exist, and that the promotional materials distributed did not reveal Citistreet's alleged non-existence. (Id. ¶¶ 59, 63.)

According to the Complaint, Defendants then had Plaintiff's customers transfer their accumulated § 403(b) annuities into Defendants' § 401(k) plans and/or transfer their monthly deductions into Defendants' § 401(k) and § 403(b) plans. (Id. ¶ 65.) The LMC Defendants gave the Citigroup Defendants exclusive rights to sell and service such plans, and denied Plaintiff all access to LMC premises in order to sell and service plans. (Id. ¶¶ 39, 66.) Plaintiff alleges that these actions violated ERISA and 11 NYCRR 51.5, among other laws and regulations. (Id. ¶¶ 72–73, 76.)

In a letter dated September 25, 2001 Plaintiff was informed that effective October 1, 2001 he could not enroll any LMC employees hired after that date into

P-049

Plaintiff's § 403(b) plan because the employees would be required to enroll in the new § 401(k) plan administered by Citistreet. (Id. ¶ 68.) LMC did not give a Summary Plan Description to every participating beneficiary, which Plaintiff alleges is in violation of ERISA provisions. (Id. ¶ 76.) Plaintiff also alleges that the Participation Agreement utilized by Citistreet has not been approved by the New York State Insurance Department ("NYSID"), in violation of § 3201 of New York State Insurance Law. (Id. ¶ 87.)

Plaintiff alleges that the Citigroup Defendants are not licensed by NYSID to act as insurance agents or consultants, in violation of Article 21 of the New York State Insurance Law. (Id. ¶¶ 89–90.) Plaintiff also alleges that Defendants, including Defendant Buck, "have solicited applications for, and circulated, and caused to be circulated sales literature regarding variable annuities and mutual funds to plaintiff's customers without being properly licensed to do so by the NYSID, or the NASD." (Id. ¶ 93.)

Plaintiff contends that the literature distributed by Defendants states that the Defendants would not notify the plan participants of any material changes in the plan benefits or features, which Plaintiff asserts is in violation of ERISA § 104(b)(1)(B), 29 U.S.C. § 1024(b)(1)(B). (Id. ¶ 135.)

7

## DISCUSSION

### I. Count One: Plaintiff's ERISA Claim

In Count One, Plaintiff alleges that "[c]ertain of the defendants, if not all of them, are fiduciaries under ERISA." (Compl. ¶ 129.) Plaintiff argues that ERISA § 405(a), 29 U.S.C. § 1105(a), provides for liability on a part of a fiduciary for a breach of any co-fiduciaries' obligations, and that Defendants have therefore made Plaintiff a potential target of litigation by his § 403(b) plan participant customers, due to the Defendants' alleged breaches of their fiduciary duties. (Compl. ¶¶130–31.) In fact, however, 29 U.S.C. § 1105(a) provides that:

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary *with respect to the same plan* in the following circumstances:
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a) (emphasis added).

Plaintiff concedes that the plans he sold to LMC employees were not subject to ERISA regulations because the plans met the requirements for exemption under 29 C.F.R. § 2510.3-2(f). (Compl. ¶ 47.) In other words, he has agreed that the plans were not originally "the same plan" as any offered by Defendant. However, Plaintiff asserts

8

that his non-ERISA plans were "converted" into an ERISA § 403(b) plan "by the actions of the LMC Defendants[.]" (Compl. ¶ 128.) Plaintiff asserts that this conversion occurred because the Defendants' actions rendered the § 403(b) plan "out of compliance with the rules set forth in 29 C.F.R. § 2510.3-2(f)." (Pl.'s Mem. Law Opp'n Mot. Dismiss at 8.) This section states that:

> For the purpose of Title I of the Act and this chapter, a program for the purchase of an annuity contract or the establishment of a custodial account described in section 403(b) of the Internal Revenue Code of 1954 (the Code), pursuant to salary reduction agreements or agreements to forego an increase in salary, which meets the requirements of 26 CFR 1.403(b)-1(b)(3) shall not be "established or maintained by an employer" as that phrase is used in the definition of the terms "employee pension benefit plan" and "pension plan" if
> (1) Participation is completely voluntary for employees;
> (2) All rights under the annuity contract or custodial account are enforceable solely by the employee, by a beneficiary of such employee, or by any authorized representative of such employee or beneficiary;
> (3) The sole involvement of the employer, other than pursuant to paragraph (f)(2) above, is limited to any of the following:
> > (i) Permitting annuity contractors (which term shall include any agent or broker who offers annuity contracts or who makes available custodial accounts within the meaning of section 403(b)(7) of the Code) to publicize their products to employees,
> > (ii) Requesting information concerning proposed funding media, products or annuity contractors;
> > (iii) Summarizing or otherwise compiling the information provided with respect to the proposed funding media or products which are made available, or the annuity contractors whose services are provided, in order to facilitate review and analysis by the employees;
> > (iv) Collecting annuity or custodial account considerations as required by salary reduction agreements or by agreements to forego salary increases, remitting such considerations to annuity contractors and maintaining records of such considerations;
> > (v) Holding in the employer's name one or more group annuity contracts covering its employees;

P-049

> (vi) Before February 7, 1978, to have limited the funding media or products available to employees, or the annuity contractors who could approach employees, to those which, in the judgment of the employer, afforded employees appropriate investment opportunities; or
> (vii) After February 6, 1978, limiting the funding media or products available to employees, or the annuity contractors who may approach employees, to a number and selection which is designed to afford employees a reasonable choice in light of all relevant circumstances. Relevant circumstances may include, but would not necessarily be limited to, the following types of factors:
>> (A) The number of employees affected,
>> (B) The number of contractors who have indicated interest in approaching employees,
>> (C) The variety of available products,
>> (D) The terms of the available arrangements,
>> (E) The administrative burdens and costs to the employer, and
>> (F) The possible interference with employee performance resulting from direct solicitation by contractors; and
>
> (4) The employer receives no direct or indirect consideration or compensation in cash or otherwise other than reasonable compensation to cover expenses properly and actually incurred by such employer in the performance of the employer's duties pursuant to the salary reduction agreements or agreements to forego salary increases described in this paragraph (f) of this section.

29 C.F.R. § 2510.3-2(f).

Plaintiff has failed to allege any facts in support of his contention that his plans no longer meet the requirements for exemption under this provision, instead stating this argument in purely conclusory terms. (Pl.'s Mem. Law Opp'n Defs.' Mot. Dismiss at 8 (citing Compl. ¶¶ 48–49); Compl. ¶¶ 48–49.) Therefore, the Complaint and Plaintiffs' subsequent submissions provide the Court with no basis for finding that Plaintiff is a fiduciary of any ERISA plan. The Court also notes that even if Plaintiff were found to

10

be the fiduciary of some ERISA plan, his plans are not the "same plan[s]" as Defendants'§ 403(b) and § 401(k) plans, as required by 29 U.S.C. § 1105(a).

The cases Plaintiff cites to support the argument that Congress intended the definition of "fiduciary" in ERISA to be broadly construed (Pl. Mem. Law Opp'n Mot. Dismiss at 9–10) are inapposite because they stand for the proposition that when an entity has acted like a fiduciary, exercising control and authority regarding disposition of plan assets or administering the plan, the entity may be found to be a fiduciary. E.g. LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997). Plaintiff clearly has not acted as a fiduciary with respect to Defendants' plan, since far from exercising control and authority with respect to the new plans, he is apparently no longer even allowed to enter the hospital lobby. (Compl. ¶ 39.) Moreover, these cases do not suggest that any breadth in the term "fiduciary" is intended to relax the requirement that the plan at issue must be the "same plan." See LoPresti, 126 F.3d at 40.

In sum, Plaintiff has not demonstrated that his own plan was the same plan as the Defendants' or that it was an ERISA plan. Plaintiff's ERISA claim must therefore be dismissed, because even accepting all facts alleged in the Complaint as true, Plaintiff has failed to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

## II. Counts Two and Three: Plaintiff's Antitrust Claims

Defendants assert that the antitrust claims asserted in Counts Two and Three should be dismissed because, among other reasons, Plaintiff has failed to identify a

11

cognizable antitrust market. (Defs.' Mem. Law Supp. Mot. Dismiss at 8–9.) "[A]n antitrust plaintiff must demonstrate, as a threshold matter, that the defendant's conduct caused anti-competitive harm in '*the relevant market*.'" Discon, Inc. v. NYNEX Corp., 86 F.Supp.2d 154, 160 (W.D.N.Y. 2000) (quoting Capital Imaging Assoc. v. Mohawk Valley Med. Assoc., Inc., 996 F.2d 537, 543 (2d Cir. 1993)). "The relevant market must be defined according to both geography and the product or service at issue." Id. (quoting Hunter Douglas, Inc. v. Comfortex Corp., 44 F.Supp.2d 145, 151 n.9 (N.D.N.Y. 1999). A relevant product market is "composed of products that have reasonable interchangeability for the purposes for which they are produced--price, use and qualities considered." Id. (quoting United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 404 (1956)). Failure to identify an appropriate relevant market is grounds for dismissal of a Complaint. Id.

To survive a Rule 12(b)(6) motion to dismiss, an alleged product market: 1) must "bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes – analysis of the interchangeability of use or the cross-elasticity of demand," and 2) must be plausible. Todd v. Exxon Corp., 275 F.3d 191, 199 (2d Cir. 2001) (internal citations omitted). Instances in which dismissal at this stage is appropriate "frequently involve either (1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market

P-049

should be limited in a particular way." Id.

According to the Complaint, "[t]he relevant product market involved in this litigation consists of thousands of present, past, and future employees of LMC." (Compl. ¶ 151.) In other words, in the Complaint, Plaintiff defined the "relevant market" in terms of the buyers of the products that Plaintiff sells, not in terms of the product itself. Plaintiff has not cited any precedent to support the contention that the relevant market could reasonably be defined in terms of buyers of a product rather than in terms of the product, and the Court finds that the employees of LMC cannot constitute the relevant product market. However, Plaintiff subsequently elected to alter this definition, stating that "the cognizable product market at issue is the market of retirement investment vehicles available to the 3,000-plus employees of the Lutheran Medical Center." (Pl. Mem. Law Opp'n Mot. Dismiss at 17.)

The Court finds that Plaintiff has made no showing that the purported "market" he has defined can support any meaningful analysis of the interchangeability of use or cross-elasticity of demands with relation to the relevant product, because employers are not required to offer 401(k) or 403(b) plans *at all*, let alone to offer a competing array of options.[5] The Court concludes that there can be no antitrust violation where, as here, the

---

[5] See, e.g., Karen C. Burke & Grayson M.P. McCrouch, *Privatizing Social Security: Administration and Implementation*, 58 WASH. & LEE L. REV. 1325, 1352 n.24 (2001) (noting that "only around fifty percent of full-time workers in the private sector are covered by any type of employer-provided retirement plan, and around twenty-five million individuals participate in 401(k) plans" and that "401(k) plans are disproportionately concentrated among large employers and are almost nonexistent at small firms") (internal quotations and citations omitted); Steven C. Colburn & Ted D. Englebrecht, *IRS Program for Correcting 403(b) Plan Defects*, 59 TAX'N FOR ACCT. 268 (1997) (explaining how employers may become

13

P-049

alleged "relevant product" only exists as a consequence of the employer's voluntary decision, with the result that there is no meaningful demand for or interchangeability of products.

## III. Count Four: Plaintiff's RICO Claim

"To state a claim for damages under RICO a plaintiff . . . must [allege]: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Town of West Hartford v. Operation Rescue, 915 F.2d 92, 100 (2d Cir. 1990) (citing 18 U.S.C. § 1962(a)-(c) (1976)). In order to have standing to assert these claims, a plaintiff must demonstrate that he has suffered a "direct injury" as a consequence of the alleged RICO violation; harm to a third party will not suffice to support recovery. Holmes v. Securities Investor Protection Corp., 503 U.S. 259 (1992); Laborers Local 17 Health & Benefit Fund v. Phillip Morris, Inc., 191 F.3d 229 (2d Cir. 1999).

The Court finds that even accepting all allegations in the Complaint as true, Plaintiff lacks standing to assert a RICO claim. The Court has concluded, as discussed above, that there was simply nothing illegal about Defendants' decision to exclude Plaintiff from selling plans to new employees, and therefore this legitimate business

---

ineligible to offer 403(b) plans).

14

decision cannot constitute a legally cognizable injury for purposes of the RICO statute. Any alleged illegal actions that would only affect those individuals who, unlike Plaintiff, have *not* been excluded from the population of buyers or sellers — specifically, Defendants' alleged use of a legally non-existent corporation in an attempt to somehow defraud plan participants (e.g. Compl. ¶ 193) — constitute a purported harm to third parties, not a direct injury. In short, as Plaintiff's business has been validly and legally severed from Defendants' businesses, Plaintiff does not have standing to object to any of Defendants' business practices under RICO.

## IV. Counts Five Through Fifteen: Plaintiff's State and Common Law Claims

As Plaintiff's only federal causes of action have now been dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367(c)(3).

## CONCLUSION

For the reasons set forth above, the Motions to Dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(1) brought by all remaining Defendants in this case are GRANTED. The Clerk of Court is directed to enter a final judgment of dismissal and to close the case.

SO ORDERED.

Dated: April 18, 2005
Brooklyn, New York

s/SJ
Senior U.S.D.J.

P-049